### APPEAL OF B. F. BOYER CO.

Docket No. 5739.    Submitted February 11, 1926.    Decided June 22, 1926.

1. Cost of advertising for promoting sale of Liberty bonds, *held* to be an ordinary and necessary business expense.

2. Rates of depreciation determined.

3. Invested capital adjusted.

*J. Marvin Haynes, Esq.*, and *H. E. Witman, C. P. A.*, for the petitioner.

*Ellis W. Manning, Esq.*, for the Commissioner.

Before GRAUPNER,[1] TRAMMELL, and PHILLIPS.

#### FINDINGS OF FACT.

1. The taxpayer is a New Jersey corporation with its principal office at Camden and is engaged in the business of manufacturing woolen yarns.

2. In 1919, the taxpayer spent $45 for advertising and promoting the sale of Liberty bonds in an advertisement which appeared over its corporate name. The taxpayer sought to deduct this amount in its return for 1919 as a donation for advertising the sale of Liberty bonds. The Commissioner disallowed the deduction.

3. In April, 1918, the taxpayer was instructed by a branch of the Council of National Defense to use every available spindle for the manufacture of worsted yarn suitable for making O. D. Army uniforms. The yarn required for this purpose was considerably heavier and coarser than that which the taxpayer had theretofore manufactured and for which its machinery was designed. The manufacture of this heavier and coarser yarn, which was commenced in 1918 and carried on through that year, and to some extent in 1919 and 1920, resulted in unrepairable damage to the spinning machines from placing an unduly heavy strain upon them and by wearing grooves in the iron rolls. There is normally a 20 per cent stoppage of machines in the taxpayer's factory due to necessity for changes in gearing to accommodate varied sizes of yarn which it manufactures for its ordinary trade, and there was stoppage for replenishing machines, but in 1918 the stoppage was only 7½ per cent, the machines being kept in almost constant operation upon a single size of yarn. Due to this rush of war work, the machines were not stopped with sufficient frequency to permit the making of customary repairs.

---

[1] This decision was prepared by Mr. Graupner during his term of office.

During at least a part of 1918 the taxpayer was forced to operate its plant with inexperienced employees, due to its experienced operators being attracted by higher wages to work with ship-building companies located in that vicinity. These conditions served to augment the normal depreciation of the plant machinery.

4. Prior to 1918 the taxpayer computed and entered on its books, depreciation on machinery at the rate of 5 per cent. For 1918, 1919 and 1920, it computed and took deductions for depreciation at the rate of 7½ per cent. The Commissioner refused to allow deductions of the increase in rate of depreciation.

5. A depreciation rate of 7½ per cent represents a fair rate for the computation of depreciation of the machinery used by the taxpayer in its plant in the years 1918, 1919, and 1920.

6. The taxpayer's plant is composed of three brick buildings and one steel frame building with an exterior covering of sheet iron and interior lining of wood. Adjacent to the taxpayer's plant is located a chemical plant, the acid fumes from which, beginning in 1918, have had a noticeable effect on the window frames and rain spouts of the taxpayer's buildings. The vibration resulting from the manufacture of the heavier and coarser yarn required for war purposes served to augment the normal depreciation of the buildings.

7. Prior to 1919 the taxpayer computed depreciation on its buildings at the composite rate of 2½ per cent. Beginning with 1918, and for the years 1919 and 1920, it computed and recorded on its books depreciation at the rate of 3 per cent. The deduction sought for increased depreciation was disallowed by the Commissioner.

A depreciation allowance computed at the rate of 3 per cent represents a reasonable allowance for depreciation of taxpayer's buildings for the years 1918, 1919 and 1920.

8. The Commissioner, in computing invested capital for the year 1919, deducted $39,981.85 as prorated 1918 Federal income and profits taxes, which he considered as $94,609.28. The final tax liability for the year 1918 is $85,811.01, as shown by certificate of overassessment number 450241, schedule No. 14327.

9. The Commissioner in computing invested capital for the year 1920 reduced the surplus account at December 31, 1919, by 1918 Federal income and profits taxes in the amount of $100,399.26. The final tax liability for the year 1918 is $85,811.01, as shown by certificate of overassessment number 450241, schedule No. 14327. The " capital stock, surplus, reserves and additions per Revenue Agent's report, October 16, 1925, $511,726.83," shown in the Commissioner's deficiency letter of June 2, 1925, includes a charge of $95,282.02 for 1918 Federal income and profits taxes, as against the final tax liability of $85,811.01 for the year 1918.

10. The Commissioner reduced the 1919 and 1920 invested capital by $982.73, net additional taxes for 1916 and 1917 assessed and paid during the years 1920 and 1921.

The payments made on account of these taxes are as follows:

Additional taxes paid and charged to surplus account:

| | |
|---|---:|
| 1920 —— December 22 —— 1917 taxes | $947. 13 |
| Less 1916 taxes overpaid | 14. 62 |
| | 932. 51 |
| 1921 —— May, 1923 —— 1917 taxes | 50. 00 |

OPINION.

GRAUPNER: The issues in this appeal, briefly, are: (1) The right of the taxpayer to deduct the amount spent in 1919 for advertising and promoting the sale of Liberty bonds. (2) The amount allowable as deductions for depreciation for 1919 and 1920. (3) Loss on sale of capital assets in 1920. (4) Adjustment of invested capital for 1919 and 1920 on account of depreciation deductions and charges to depreciation reserves on assets sold or discarded. (5) Reduction of invested capital for 1919 and 1920 on account of taxes for prior years.

On the first of these questions the parties stipulated that the expenditures of $45 in 1919 for advertising and promoting the sale of Liberty bonds was for an advertisement over the corporation's name. This advertisement was made in accordance with the custom of the time. Such an advertisement was a combination of patriotic endeavor and business publicity, and received the recognition of the Commissioner in article 562 of Regulations 45. A corporation of the character of the taxpayer is entitled to deduct amounts spent in advertising as a part of its ordinary and necessary business expense and, as the particular form of advertising to be employed is, of necessity, within the judgment of the officers of such a corporation as the taxpayer, we believe that the Commissioner improperly disallowed the deduction.

With respect to the question of depreciation, we found as facts that allowances computed at 7½ per cent on machinery and 3 per cent on buildings represented reasonable amounts to be allowed for depreciation sustained in 1919 and 1920. The amounts to be allowed as deductions for depreciation should be computed at these rates and the tax recomputed accordingly.

With respect to claimed loss on the sale of capital assets in 1920, the taxpayer sets forth as the facts upon which it relies that—

The loss on the sale or discard of capital assets treated as a deduction from income by the taxpayer in the year 1920 is $6,956.53, whereas the Commissioner has allowed a loss of $6,843.20. This difference is due to the change in depreciation rates for the years 1918 and 1919 as made by the Commissioner.

These allegations of fact are admitted by the Commissioner in his answer. These allegations and the Commissioner's answer thereto require us, under section 274(g) of the Revenue Act of 1926, to consider the depreciation to be allowed for 1918. The rates at which depreciation of assets is to be computed for 1918, 1919, and 1920, are set forth above, and any loss sustained upon the sale of assets in 1920 should be determined after making allowance for depreciation by the application of those rates. Section 274(g), however, prohibits our redetermining the correctness of the tax for the year 1918.

As to the fourth question, the rates as set forth in the findings of fact should be applied for the years 1918, 1919, and 1920, in determining the amount of the reserves for depreciation to be taken into account in computing the invested capital for those years.

With respect to the last question the taxpayer contends that surplus at the beginning of any taxable year may not be reduced on account of taxes for a preceding year. The principle here involved is settled by section 1207 of the Revenue Act of 1926. There is nothing in the record to show that the Commissioner's method is not in accordance with the regulations, and under section 1207 we must approve the method used.

The invested capital for 1919 and 1920 should be adjusted in accordance with findings 8 and 9. As the payments of additional taxes for 1916 and 1917 mentioned in findings 10 were not made until after the beginning of 1920, the taxpayer's invested capital for 1919 and 1920 was properly determined by a reduction of the amount of such taxes.

> *Order of redetermination will be entered on 15 days' notice, under Rule 50.*